UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEVEN BENOIT | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-12718-RCL |
| | ) | |
| CHARLES J. WEIS and | ) | |
| MAURA WEIS | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR SANCTIONS

### I. INTRODUCTION

Defendants, Charles J. Weis and Maura Weis, (sometimes hereafter referred to as "the Weises"), submit this memorandum in support of their motion to dismiss Plaintiff Steven Benoit's ("Benoit" or "Plaintiff") claims against them (1) under Rule 12(b)(1) for lack of subject-matter jurisdiction because Benoit lacks standing to bring his claims; or (2) in the alternative, under Rule 12(b)(6) because Benoit has failed to state a claim against them upon which relief can be granted.

### II. BACKGROUND

On December 28, 2004, Charles and Maura Weis were named as defendants in a U.S. District Court suit filed by Steven Benoit[1] in the District of Massachusetts. Benoit as an individual alleges that the Weises owe him money for a house he partially built for them in

---

[1] Although Benoit's court filings use alternate spellings of his first name, his address is consistently listed as 8 Linden Road, East Sandwich, Massachusetts.

Cumberland, Rhode Island. Benoit is seeking more than $161,000.00 for money due, allegedly, for the partial construction of a home for Mr. and Mrs. Weis between April of 2000 and September of 2000. Mr. and Mrs. Weis emphatically deny that they owe Mr. Benoit any money for any work performed by Mr. Benoit for the construction of their property at 6 Avalon Place, Cumberland, Rhode Island.

## III. PERTINENT FACTS

A factual recitation of the history of this case is necessary. In February of 2000, Charlie Weis accepted a position as Offensive Coordinator for the New England Patriots Football Club. At the time, Mr. Weis and his wife, Maura, were residing in New Jersey, with their two children, as Mr. Weis had just completed a coaching position with the New York Jets for the 1999 football season.

When Mr. Weis arrived in New England in early 2000, he began looking for a place for his family to live. After some searching, he found a house lot in Cumberland, Rhode Island. Charlie also spoke to Benoit at approximately this same time about constructing a home for the Weis family on this lot. During their discussions, Mr. Weis made it clear to Benoit that the house had to be completed by the conclusion of the Patriots training camp at the end of August of 2000. Weis explained that his wife was working with a real estate broker to sell their house in New Jersey and it was necessary for the family to be settled in Rhode Island by the beginning of the school year. The Weises have two children, both were under 10 years of age at the time. Benoit assured Mr. Weis that he would have the house completed by that date. The Weis's sold their house in New Jersey and set the closing date to coincide with the family's move to Cumberland.

While Mr. Weis was busy coaching the New England offense, Mr. Benoit apparently was busy doing things other than working on the construction of the house in Cumberland. It was

2

clear by mid-August that the house was no where near completion. Benoit then informed Mr.
Weis that he would have the house completed by the end of September. In reliance on that
promise, the Weis family moved into a suite of rooms at a Foxboro hotel. During their stay at the
hotel, Maura Weis drove the children to school in Cumberland from Foxboro.

After approximately a month's time, Benoit had still not completed the house. Now he
had a new proposal. He told the Weises that he would finish the basement and they could move
in there and he would finish the remainder of the house quickly. After moving the family into
three rooms in the basement, it became clear to the Weises that Benoit and his crew were only
working on the house sporadically and would not finish the house any time soon. After a month
of dwelling in the basement, the Weises realized that Mr. Benoit was simply not going to
complete the house as he had promised and they were forced to buy another house in
Cumberland and moved into that residence.

About this time, Mr. Weis contacted legal counsel. His attorneys then negotiated with
Mr. Benoit, in good faith. Benoit agreed to either sell the house under construction to another
buyer by December 1, 2000, in the alternative, or to buy the house, outright, from the Weises for
$510,000. In a document signed by Benoit on October 12, 2000, Benoit agreed to finish the
house at 6 Avalon Place in Cumberland. He further specifically agreed and warranted that:

> No monies are presently due and owing to any party, including Riverton
> (Benoit's construction company), in connection with the construction of the
> premises. Riverton will complete the construction of the Premises in a timely and
> workmanlike manner utilizing the same construction techniques and quality of
> material previously used in the construction. Riverton agrees and warrants to
> Charles Weis that Riverton will complete the construction of the premises at no
> cost to Charles Weis. Riverton agrees with and warrants to Charles Weis that it
> will not place, cause to be placed, or allow any mechanic's lien or materialman's
> lien to be placed on or against the Premises. Riverton warrants that it will be
> solely responsible for any costs associated with completing the construction on
> the Premises.

3

The addendum to the agreement containing Benoit's warranties specifically survived any breach of contract by Riverton to buy the house.

Needless to say, Benoit did not complete construction of the premises; did not market or sell the property to a third party; and did not buy the house from the Weises; and, allowed a lien to be placed on the house by General Builders Supply in the amount of $44,187.29 for lumber supplied to the project but never paid for by Benoit. Further liens were then filed against the property by other sub-contractors that Benoit had not paid for sheet rock and for electrical supplies.

The Weises were then sued in Providence Superior Court by General Builder's Supply on February 20, 2001 (C.A. No. PC01-0840). The Weises countersued Riverton Development Corporation and Stephen Benoit for failing to complete the Purchase and Sale Agreement and complete construction of the house and pay his obligations to the businesses that had placed liens against the Weis' home. Charlie Weis resolved all of the outstanding bills owed to the subcontractors and suppliers out of his own pocket, even though he had previously provided Benoit with funds from a construction loan to pay for these expenses. Charlie then hired a local, reputable contractor to complete the construction of the house and paid that builder. All during this time, the Weises were making two separate mortgage payments: (1) for the house being built, and (2) for the other house they were living in in Cumberland.

Once the house was finally completed, in 2001, the Weises had to make a decision to either sell the new house or sell the house they were living in. They received a solid offer to purchase the house that they were living in, accepted it, closed on it, and moved to their new home.

The Weises believed this series of unfortunate events was over in 2001. As far as they were concerned, they had paid Mr. Benoit more than he was entitled to and actually had expended further sums of money to clean up the mess left by Benoit and Riverton and to complete construction of the house. The Weises have lived continuously in the house in Rhode Island from 2001 to the present and Mr. Benoit made no claim against the Weises or the property during that time. Certainly, any reasonable person must question what has motivated Benoit to file this complaint now – just after Charlie Weis was hired for a very prestigious coaching position.   The facts are that the Weises were victimized by an unscrupulous contractor who consistently failed to live up to his obligations. They have paid Benoit more than he is entitled to.

**Benoit's Bankruptcy Filings**

Stephen L. Benoit filed a voluntary petition in the Bankruptcy Court for the District of Massachusetts, under Chapter 7 of the U.S. Bankruptcy Code, on January 7, 2003.  Benoit is apparently no stranger to proceedings and procedures in the Bankruptcy Court.  He had previously filed a voluntary Chapter 13 petition (bankruptcy petition no. 94-11997) back in March of 1994 (See Docket Text attached as Exhibit A).  A creditor objected to the confirmation of Benoit's 1994 plan.  The Chapter 13 Trustee moved to dismiss the case and the Trustee's motion to dismiss was granted, with prejudice, pursuant to 11 U.S.C. §109(g).

In August of 2002 Benoit filed a voluntary Chapter 7 petition (bankruptcy petition no. 02-15676) See Docket Text and Petition attached as Exhibit B).  In that petition, he did list Mr. and Mrs. Weis as potential creditors of the estate.  He also listed his alleged claim against them as a potential asset of the estate under category 15, accounts receivable.  Benoit noted that he had an alleged claim for $165,000, described as "Charles Weis renovation".  The 2002 petition,

5

however, was dismissed by the Bankruptcy Court in September of 2002 for failure to file a matrix.

Three months later, on January 7, 2003 Mr. Benoit filed the 2003 bankruptcy petition. (See Docket Text and Petition attached as Exhibit C). In November of 2003, the Trustee for Benoit's bankruptcy estate sought an order from the Bankruptcy Court denying Benoit's discharge because Benoit had failed to list creditors in his bankruptcy petition; failed to list debts in his bankruptcy petition; failed to describe or note a repossession of assets in his Statement of Affairs; failed to list assets in Schedule B of his petition; and failed to truthfully answer and adequately explain his assets and liabilities at his 341(a) hearing. (See Docket Text and Complaint attached as Exhibit D).In March of 2004, the Bankruptcy Court entered an Order denying Benoit's discharge. (See Order attached as Exhibit E). The trustee has also brought an adversary proceeding against one of Benoit's partners in a real estate trust in Massachusetts for pre- and post-petition transfers of estate assets. (See Complaint attached as Exhibit F).

Despite having the Court deny a discharge of his debts for his failure to completely and truthfully schedule and disclose all of his assets and liabilities, Benoit, on December 28, 2004, filed this claim against Mr. and Mrs. Weis. Benoit's gall, under these circumstances, is unmitigated. The circumstances indicate that he, personally, initiated a claim which he knew (if it had any merit) was legally owned by the estate and which he had a legal duty to disclose to the Trustee and the Court. It appears that Benoit felt he might score some quick nuisance settlement cash by filing suit against Charlie Weis and by trying to embarrass him publicly. For the following reasons, the Complaint should be dismissed with prejudice, and the defendants awarded sanctions and their costs, including attorney fees.

## IV.  ARGUMENT

### A.    THE CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION BECAUSE BENOIT LACKS STANDING TO BRING HIS CLAIMS.

#### Legal Standard

The First Circuit has yet to definitively determine whether motions to dismiss for lack of standing should be analyzed under a Rule 12(b)(1) standard or a Rule 12(b)(6) standard. *See Steir v. Girl Scouts of the USA*, 383 F.3d 7, 15 n. 9 (1st Cir. 2004). However, the Court has indicated that Rule 12(b)(1) is the more appropriate avenue for adjudicating standing issues. *See United States v. AVX Corp.*, 962 F.2d 108, 114 n. 6 (1st Cir. 1992) (considering standing argument pursuant to Rule 12(b)(6), as parties did, but recognizing "that Rule 12(b)(1) arguably provides a closer analogy"). *See also Lecrenski Bros. Inc. v. Johnson*, 312 F. Supp. 2d 117, 120 n.2 (D. Mass. 2004) (recognizing same). *Accord Colorado Environmental Coalition v. Wenker*, 353 F.3d 1221 (10th Cir. 2004) (choosing to treat appeal as seeking review of a Rule 12(b)(1) dismissal because the grounds cited by the district court, including standing, were jurisdictional); *Coalition for Underground Expansion v. Minetta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (analyzing standing issue under Rule 12(b)(1)); *Faibisch v. University of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002) ("We have held, however, that if a plaintiff lacks standing, the district court has no subject matter jurisdiction. Therefore, a standing argument implicates Rule 12(b)(1).") (citation omitted).  Therefore, Defendants will address the issue pursuant to Rule 12(b)(1).

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court may look to supplemental materials in addition to pleadings. *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002); *Heinrich v. Sweet*, 44 F. Supp. 2d 408, 412 (D. Mass.

1999). This is so because "Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction," and therefore, "the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on authority to entertain the case." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (internal quotations omitted); *see also Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) ("Although 'the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'") (quoting *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

"Standing is a threshold question in every case before a federal court." *McMichael v. County of Napa*, 709 F.2d 1268, 1269 (9th Cir 1983). Article III, § 2 of the U.S. Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies." Accordingly, to establish standing under the Constitution, a plaintiff must demonstrate: (1) an "injury in fact" that is concrete and not conjectural; (2) a causal connection between the injury and the defendant's alleged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In addition to these constitutional requirements, certain prudential limitations may also play a role. *See Central Arizona Water Conservation Dist. v. United States Envtl. Protection Agency*, 990 F.2d 1531, 1538 (9th Cir.), *cert. denied*, 510 U.S. 828 (1993)). The prudential limitations recognized by courts require a plaintiff to (1) assert *his own* rights, rather than rely on the rights or interests of third parties; (2) allege an injury that is more than a generalized grievance; and (3) allege an interest that is arguably within the zone of interests protected or regulated by the statute or constitutional

8

guarantee in question. *See Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987); *Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d 101 (1st Cir. 1995); *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir. 1995); *Conservation Law Foundation of New England*, 950 F.2d 38 (1st Cir. 1991).

The burden of alleging facts necessary to establish standing falls upon the party seeking to invoke the jurisdiction of the federal court. *See Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343 (1975); *United States v. AVX Corp.*, 962 F.2d 108, 114 (1st Cir. 1992); *Holly Sugar Corp. v. Veneman*, 335 F. Supp. 2d 100, 104 (D.D.C. 2004) ("The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence.") (quotation and citation omitted).

### Benoit Lacks Standing

Here, Stephen L. Benoit filed a voluntary petition, under Chapter 7 of the Bankruptcy Code, on January 7, 2003. Without addressing the Weis' denial of Benoit's claims, Benoit simply does not have any legal standing to bring this action against the Weises. Any claims for monies allegedly owed for the house construction of the Weis' home would clearly be the property of the Chapter 7 estate, at the time Benoit filed his bankruptcy petition in January of 2003. *See* 11 U.S.C. § 541(a); *Wood v. Premier Capital*, 291 B.R. 219, 224 (1st Cir. BAP 2003) (property of bankruptcy estate includes all potential causes of action that exist at the time petitioner files for bankruptcy). By operation of statute, assets that Benoit failed to schedule remained the bankruptcy estate's property. See 11 U.S.C. § 554. Thus, the fact that Benoit failed to list his claim against the Weises does not alter the fundamental indisputable fact that the claim belonged exclusively to the bankruptcy estate. *See id. See also Carlock v. Pillsbury Co.*, 719 F. Supp. 791, 856 (D. Min. 1989) ("A cause of action is a property right which passes to the Trustee

in bankruptcy even if such cause of action is not included in schedules filed with the bankruptcy court."). Furthermore, since the suit claiming monies owed to Benoit for the house construction was never scheduled as an asset it legally could not have been abandoned by the Chapter 7 Trustee. *See* 11 U.S.C. §554(d); *United States v. Grant*, 971 F.2d 799, 803 n.4 (1st Cir. 1992) (*en banc*) (abandonment by Trustee "does not relinquish an undisclosed interest in property"). Because causes of action are property of the bankruptcy estate, the Trustee has exclusive standing to assert such claims. *See, e.g., Schertz-Cibolo-Universal City, Indep. School Dist. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994).

On January 7, 2003, Benoit filed a voluntary petition, under Chapter 7 of the Bankruptcy Code. From that time forward, Benoit did not have any legal standing to bring this action against the Weises. Any claims for monies allegedly owed for the Weis' house construction would be the property of the Chapter 7 estate at the time Benoit filed his bankruptcy petition, and standing to assert such claim would lie exclusively with the bankruptcy Trustee. Benoit cannot recover from these Defendants under any set of circumstances. He is not entitled to relief from this Court. His claims must fail as a matter of law. Because Benoit lacks standing, the complaint must be dismissed.

## B.    SANCTIONS SHOULD BE IMPOSED ON BENOIT AND/OR HIS COUNSEL.

A district court may award attorney's fees as a sanction against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). To invoke this exception under a claim of "vexatious" conduct, the moving party must demonstrate that the losing party's actions were "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Local 285 v. Nonotuck Resource Assocs.*, 64 F.3d 735, 737 (1st Cir. 1995).

Similarly, 28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The statute "authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety." *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). Counsel's conduct is judged from an objective standard, and sanctions may be imposed whether or not the attorney intends to harass or annoy, or acts in bad faith. *See McClane, Graf, Raulerson & Middleton, P.A. v. Rechberger*, 280 F.3d 26, 42 (1st Cir. 2002). *See also Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997) ("Fees may be assessed without a finding of bad faith."). A district court has broad discretion in imposing sanctions. *See Rechberger*, 280 F.3d at 42.

Defendants submit that the Plaintiff and/or his counsel, should be required to pay the costs incurred by the Weises, including attorneys' fees, in responding to the Complaint, as a sanction. Given the history, Defendants submit Benoit acted in bad faith in commencing the present action. At a minimum, the filing of the Complaint was objectively unreasonable conduct on the part of Benoit and/or his counsel. As a result of such conduct, the Weises have incurred considerable attorney's fees and costs, which should be paid by the person or persons responsible for bringing the present action.

## V. CONCLUSION

For the reasons stated above, Plaintiff's claims against the Weises should be

11

dismissed in their entirety, with prejudice, for lack of subject-matter jurisdiction, and the Weises

should be awarded the expenses incurred in responding to the Complaint, including reasonable

attorney's fees.

<div style="margin-left: 40%;">

Respectfully submitted,

DEFENDANTS,
By their attorneys,

HOLLAND & KNIGHT LLP

William P. Devereaux, Esq. (BBO No. 122220)
Stephen A. Izzi, Esq. (BBO No. 547488)
Robert J. Crohan Jr., Esq. (BBO No. 652965)
One Financial Plaza, Suite 1800
Providence, RI 02865
(401) 751-8500
(401) 553-6850 (Fax)

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of February, 2005, a true copy of the above document
was served by first class mail, postage pre-paid, upon the following:

Ronald W. Dunbar, Jr., Esq.
William R. Bagley Jr., Esq.
DUNBAR & RODMAN LLP
One Gateway Center – Suite 405
Newton, MA 02458

<div style="margin-left: 40%;">

Stephen A. Izzi

</div>

# 2591816_v3